**BOGARD et al. v. STIRM et al.**

No. 12286.

Court of Civil Appeals of Texas.
Galveston.

June 21, 1951.

Rehearing Denied July 12, 1951.

Charles Nordyke, of Stephenville, for appellant.

Olin G. Wellborn, of Alvin, for appellees Marion Stirm Richard et vir., Lester Richard, Ila Stirm Kingery et vir., Vivian Kingery, Irene Stirm Walker et vir., Charles E. Walker, Mildred E. Sanders et vir., Everett E. Sanders, Mabel Kaizer Baylor et vir., and Robert Baylor.

Bob S. Owen, of Alvin, for appellees Henry Stirm and Inez J. (Bitterly) Schulze.

CODY, Justice.

This is an appeal from a judgment rendered in a suit brought by Jesse Lee Bogard to construe the will of Pauline C. Baker, a widow who died in Brazoria County on November 20, 1948; particularly praying that the Fifth Paragraph of the will be construed, wherein plaintiff was named as a devisee. Plaintiff brought his suit against Henry Stirm, who was a brother of the testatrix, and against Inez. J. (Bitterly) Schulze, a niece of the testatrix, who was also named as an executrix in the will. In addition, he brought the suit against all persons who were named as devisees in the will. The devisees, in addition to plaintiff, who was not a blood relation of the testatrix, consisted of the aforesaid Henry Stirm, Inez Schulze, and certain other nieces of the testatrix. Plain-

tiff also made the First Methodist Church at Alvin, Texas, a defendant. By his first amended original petition, he joined as parties defendants the heirs at law of the deceased who had not been made any bequests in the will; these consisted of two additional nieces.

The heirs at law of the testatrix, who had not been named as devisees in the will, failed to answer, and judgment was taken against them by default, and they are out of the case. Henry Stirm and the nieces of testatrix who were devisees under her will duly answered, and in their answer also requested that the Fifth Paragraph be construed, but requested that it be found to be too vague and indefinite to make any disposition of testatrix' property; and said defendants additionally requested that the remaining paragraphs of the will, which were Paragraphs 6 to 12, inclusive, be construed, and requested that they be construed as constituting residuary clauses of the will.

The First Methodist Church of Alvin asked leave to intervene in the suit rather than merely to answer as a defendant therein. The Lutheran Church of Alvin also intervened. The Fifth Paragraph of the will reads as follows: "Fifth: If I have Oil royalties coming they shall be sent to Henry Stirm and Inez Schulze, placed in bank, at end of year one-tenth to church, the other divided ⅓ (one-third) to executors, ⅓ (one-third) to nieces and ⅓ (one-third) to Jessie Lee Bogard."

The court, trying the case without a jury, found that the fifth paragraph of the will " * * * is so vague, ambiguous and uncertain that it is a mere matter of conjecture as to what was intended by the Testatrix and such paragraph is accordingly considered and held to be void and of no force and effect, and the property sought to be disposed of by said paragraph Fifth therefore passes under the residuary clauses of said Will, being paragraphs 6, 7, 8, 9, 10, 11 and 12."

The court further held that the paragraphs which had so been adjudged as being residuary evidenced an intention on the part of testatrix not to die intestate as to any portion of her estate, and the judgment further recited that the intervention by the Lutheran Church of Alvin was dismissed at its request, and the court adjudged that plaintiff, Jesse Lee Bogard, take nothing by his suit and that all costs be assessed against him, and further adjudged that the First Methodist Church of Alvin, Texas, take nothing by its suit, and the judgment goes on to show that plaintiff and the First Methodist Church gave notice of appeal from the judgment, but only insofar as the fifth paragraph of the will was concerned.

The plaintiff and intervenor, First Methodist Church, as appellants have here filed a joint brief urging four points to the effect (1) that the court erred in holding the fifth paragraph of the will is so vague, ambiguous and uncertain that it is a mere matter of conjecture as to testatrix' intention, and so, is void; (2) that the court should have construed the fifth paragraph of the will as having disposed of all the royalty coming to testatrix' estate to the beneficiaries named therein, including the royalty checks which were found uncashed among her effects, after her death; (3) that the court erred in not construing "¹⁄₁₀th to church" to mean the First Methodist Church of Alvin; and (4) that the court erred in holding paragraphs 6 to 12, inclusive, were intended to be residuary clauses.

The four points so urged by appellants upon appeal boil down to a complaint against the court's striking down the fifth paragraph of the will as being too vague and indefinite to be given any testamentary effect.

The general rule as to what disposition shall be made of a person's property upon his death is embodied in the law of descent and distribution. But, by the Statute of Wills, any person declared thereby as capable of making a will, is empowered to make any lawful disposition of his property to take effect upon his death provided he complies with the provisions of the Statute. So, when it is borne in mind that a testamentary disposition of property is in derogation of the law of descent and distribution, it is clear that the court must look exclusively at the terms of the

will to determine the extent to which the testator's property shall be cast by his will instead of by the law of descent and distribution. So, the disposition of property intended and effected by a will is always a question of law for the court, and no extrinsic evidence of intention is ever admissible, as such evidence would present an issue of fact. See Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 31 Am.St.Rep. 29.

■ But in determining the testator's intention from the language used in the will, extrinsic evidence is admitted as to testator's situation, the state of his family, property, and other circumstances relating to himself individually, and to his affairs, in order that the court may discover the meaning attached by the testator to the words used in the will, and apply them to the particular facts of the case. Houston Bank & Trust Company v. Lansdowne, Tex.Civ.App., 201 S.W.2d 834, 837, and authorities there cited.

It is impossible to determine the meaning of the fifth paragraph of the will by mere inspection; if it were, the paragraph would not be a proper subject for judicial construction. There is no room for reasonable construction of the testator's intention, when it has been exactly expressed in the will.

When the testatrix used this language in the fifth paragraph, "If I have oil royalties coming they shall be sent to Henry Stirm and Inez Schulze, placed in bank, at end of one year one-tenth to church, the other divided * * *", she was intending to dispose of her property in contemplation of death. She identified herself with her estate, and the intention expressed by her language is that, when her estate has oil royalty payments coming, they shall be sent to her executors, and by them placed in the bank, and at the end of the year in which such payments come in, they shall be distributed one-tenth to the church, and, of the remaining 9⁄10ths, 3⁄10ths shall go to her executors, 3⁄10ths to her nieces, and 3⁄10ths to plaintiff.

The extrinsic evidence which was admitted by the court disclosed that testatrix was at the time she executed the will the owner of oil royalties, which she continued to own until her death; that the operator of an oil lease pays the royalty owners by checks which can be collected by being deposited in the bank. The oil royalty payments which were made to the testatrix during her life during the course of a year were never very large, apparently never exceeding four thousand dollars in any year. It is reasonable to construe the provision, providing for the accumulation of the oil payments in the bank during the year they come in, as evidencing the intention that the record of the account of payments would appear in the books of the bank, and that the executors would not be annoyed by being required to make but one distribution a year, which would be simply tabulated upon their annual account.

■ It cannot be determined from the inspection of the will what church testatrix intended should receive one-tenth of the oil payments. But whom she intended to be the recipients of the other nine-tenths of the royalty payments can be determined from a mere inspection of the will. Three-tenths are bequeathed to executors. They were named in the will, and they have qualified. There is no ambiguity as to whether she intended the executors to take the bequest to them for themselves, or as trustees to hold for estate. No provision was set up in the will for the establishment of any trust, and it would never occur to a layman that when he made a bequest to his executors, he was devising such property to his own estate. There is no ambiguity relative to the bequest of 3⁄10 of the royalty payments to testatrix' nieces. She used language which included all of her nieces, and no extrinsic evidence would be admitted to show that she did not intend what she said. The same is true with respect to the bequest to plaintiff.

■ It is impossible to tell by inspection of the will what church the testatrix intended should receive 1⁄10 of the oil payments. But she clearly evidenced an intention to bequeath it to a church she wished to benefit. The evidence showed that she had attended the First Methodist Church in Alvin for more than twenty

years. She attended it before she was married. She was married there. Her husband, while alive, belonged to it, and she and her husband made substantial contributions to it. She was a member of a Ladies Class of that church, which she often attended, and made substantial contributions to it. Her husband had been buried from that church. Mr. George W. Pearson, who was a member of the Board of Stewards of the church and who had regularly attended it for 17 years, testified that he had known the testatrix from the year 1936, and that he knew her attendance on the services of that church had been fairly regular up until the time she had been injured in the automobile accident in which her husband had lost his life, which was the last of July, 1942. The crippling effects of that injury prevented her from climbing the high steps that led into the church. But she continued to send flowers to the church and her class, and to make contributions after her injury. She was not technically a member in the sense that her name was on the membership roll. But in transferring names, some times by accident a name fails to get transferred, and she may have thought, as others did, that her name was enrolled on the membership rolls of that church.

Testatrix was of German descent, and after she got out of the hospital, following the accident, which was after she had executed her will (having executed it while she was confined to hospital), she sometimes attended the Lutheran Church. But the evidence was such that, at its conclusion, counsel representing the Lutheran Church announced that church withdrew its intervention, as he considered the evidence conclusively established that testatrix intended the bequest to the "church" to the First Methodist Church. Since it was clearly the intention of testatrix to bequeath 1/10 of the royalty payments coming to her estate after her death to a church of a denomination which she omitted to name, and since, from the history of her association and connection with the First Methodist Church of Alvin for twenty years before her death, makes it highly probable that by the term "church", as used in the will, testatrix intended the First Methodist Church of Alvin, and intended no other church, we have concluded that it is a reasonable construction of the will to find that she intended the bequest to that church.

The bequest effected by the fifth paragraph poses no difficulties with respect to perpetuities suggested by appellees. By other paragraphs of her will, testatrix disposed of the property from which the royalty payments are now coming, and her devisees took that property subject to such bequest to the church. When the oil lease from which the royalty payments are now being realized expires, said devisees will hold the property which was bequeathed to them subject to paragraph five, free of the bequest in the fifth paragraph of the will.

It is our construction of the fifth paragraph of the will that testatrix intended by the language used therein to make the disposition of oil royalty payments, including the checks therefor found in her effects, as herein stated.

The judgment of the trial court is accordingly here reversed, and so rendered.